UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **TOBY JAMES FRUGE** | : | **DOCKET NO. 15-cv-2767** |
| **D.O.C. # 549883** | | |
| | | |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| | | |
| **NATE CAIN** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254 filed by Toby James Fruge ("petitioner"). Docs. 1, 7. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at Raymond Laborde Correctional Center in Cottonport, Louisiana. Nate Cain ("respondent"), former warden at Raymond Laborde Correctional Center, opposes the application. Doc. 12.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

### I.
### BACKGROUND

#### A. *Conviction*

The petitioner was charged by bill of information on May 29, 2007, in the 15th Judicial District Court, Lafayette Parish, Louisiana, with two counts of forcible rape. Doc. 12, att. 3, p. 23. The counts related to the rapes of R.A. on or about November 5, 2004, and J.H. on or about

November 12, 2006. *Id.* Following a jury trial, he was convicted on February 11, 2009, of forcible

rape of R.A. and simple rape, a responsive verdict, of J.H.[1] *Id.* at 107–08. He filed a motion for a

new trial, alleging that the judge had impermissibly commented on the evidence. *Id.* at 70–71. The

trial court denied this motion on May 21, 2009, after a hearing. *Id.* at 72; *see* doc. 12, att. 6, pp.

152–61. On the same day the petitioner was sentenced to concurrent terms of imprisonment: thirty

years on the forcible rape conviction and twenty-five years for the simple rape, with "at least" two

years to be served without benefit of probation, parole, or suspension of sentence. Doc. 12, att. 6,

pp. 168–69.

### B.  Direct Appeal

The petitioner filed a direct appeal through counsel in the Louisiana Third Circuit Court of

Appeal. *State v. Fruge*, 34 So.3d 422 (La. Ct. App. 3d Cir. 2010). There he raised the following

assignments of error:

1.  The trial court erred in denying the petitioner's motion for a new trial.
2.  The state failed to prove beyond a reasonable doubt that the petitioner had committed forcible rape.
3.  The state failed to prove beyond a reasonable doubt that the petitioner had committed simple rape.
4.  The trial court erred in failing to articulate any factors in formulating the petitioner's sentence.

*Id.* at 424. The Third Circuit reviewed these claims and denied the first three on the merits. *Id.* at

424–33. On the fourth claim, and in a related error patent, it found that the trial court had erred by

failing to articulate sentencing factors and in setting an indeterminate amount of time to be served

without benefit of probation, parole, or suspension of sentence. *Id.* at 424, 433–34. Accordingly,

---

[1] The statutes criminalizing forcible rape and simple rape under Louisiana law have since been amended to redefine the offenses as "second degree rape" and "third degree rape." LA. ACTS 2015, No. 256, § 1; *see* LA. REV. STAT. § 14:42.1(C) and *id.* at § 14:43(C). However, the elements of the offense at issue here remain unchanged.

it affirmed the convictions but vacated the sentences for both counts and remanded the case for resentencing. *Id.* at 434.

A new sentencing hearing was conducted on May 3, 2010. Doc. 12, att. 7, pp. 177–82. There the petitioner was sentenced to concurrent terms of thirty years for the forcible rape and twenty-five years for the simple rape, with two years of the forcible rape term and the entirety of the simple rape term to be served without benefit of probation, parole, or suspension of sentence. *Id.* at 179–81.

The petitioner then filed an appeal, again through counsel, in the Third Circuit. *State v. Fruge*, 139 So.3d 602 (La. Ct. App. 3d Cir. 2014). There he alleged that the sentences imposed in 2010 were constitutionally excessive. *Id.* at 604. The Third Circuit affirmed both convictions and the forcible rape sentence. *Id.* at 607. However, it agreed that the twenty-five year term for simple rape was excessive, vacated that term, and remanded the case for resentencing. *Id.* at 606–07. Both the state and the petitioner then sought review in the Louisiana Supreme Court, which granted same with respect to the state on April 24, 2015. *State v. Fruge*, 168 So.3d 406 (La. 2015). On October 14, 2015, it reversed the portion of the Third Circuit decision that vacated the simple rape sentence and remanded the matter for execution of the sentence. *State v. Fruge*, 179 So.3d 579, 586 (La. 2015). On that date the Louisiana Supreme Court also denied the petitioner's writ application with respect to the other portions of the Third Circuit decision. *State v. Fruge*, 179 So.3d 595 (La. 2015).

### C.  *Federal Habeas Petition*

There is no record that the petitioner filed an application for post-conviction relief in the state courts. Instead, he filed the instant petition in this court on November 25, 2015. *See* doc. 1, p. 24. Here he raises the following claims:

1.  The trial judge impermissibly commented on the evidence.

2.  The evidence was insufficient to support a conviction of forcible rape as to R.A.

3.  The evidence was insufficient to support a conviction of simple rape as to J.H.

4.  The sentences imposed are constitutionally excessive.

*Id.* at 3–23.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were

pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[2] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for

---

[2] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. Timeliness

Here the Louisiana Supreme Court denied review of the petitioner's final direct appeal on October 14, 2015. Thus the petitioner's conviction and sentence became final on January 13, 2016, when his time for seeking review in the United States Supreme Court on direct appeal expired. *See* Sup. Ct. R. 13. However, the instant petition was filed well before that date, on November 25, 2015. Therefore no time accrued against the petitioner's one year limit.

#### B. Exhaustion of State Court Remedies and Procedural Default

The claims raised in the instant petition were exhausted and rejected on the merits in the state courts. Therefore no basis for procedural default exists.

### C.  *Substantive Analysis*

Having determined that all claims are properly before this court, we now review them under the standards set out above.

#### 1.  *Motion for a New Trial*

The petitioner first alleges that the trial court erred by denying his motion for a new trial on the basis of the judge's comments to the jury and alleges that the judge's comments and the denial of the motion deprived him of his Sixth Amendment right to an impartial jury.

In evaluating claims of improper conduct by the trial judge, this court looks to the proceedings as a whole. *McCoy v. King*, 2007 WL 2461941, *6 (S.D. Miss. Jul. 23, 2007) (citing *United States v. Carpenter*, 776 F.2d 1291, 1294 (5th Cir. 1980)). To rise to the level of a constitutional error, "the trial court's actions, viewed as a whole, must amount to intervention which could have led the jury to a predisposition of guilty by improperly confusing the functions of judge and prosecutor." *United States v. Davis*, 752 F.2d 963, 974 (5th Cir. 1985). The judicial intervention at issue must also be "qualitatively and quantitatively substantial to meet this test." *Id.*

The petitioner's allegations of impartiality/impermissible behavior by the trial court rest on the judge's response to a juror question on a defense exhibit. At trial the defense introduced a report from the crime lab regarding the 2006 incident with J.H. Doc. 12, att. 6, p. 64. That report noted that a reference DNA sample was taken from the petitioner in 2003. *Fruge*, 34 So.3d at 432. Certain jurors approached the trial judge in the hallway during a break in proceedings and asked why the sample predated either of the accusations. The judge responded and then the following discussion then took place between the judge, the prosecutor (Babin), and the defense attorney (Robideaux), outside of the jury's presence.

> **The Court:** The jury wants to know why the sample DNA is from 2003 when the event happened in 2004 and 2006. My response was, "I really don't know and since the"—which was a lie—"but since the person is not here any longer to answer that, all I can tell you is this relates to the incident in 2006; and that's all you need to know." And so one of the persons said, "Well, why is it all we need to know?" And I said, "Because the person is not here, and you can't ask the questions." But I know it's from a previous incident. Now I know that because you told me that. You ask to put [the exhibit] in?
>
> **Mr. Robideaux:** I do, but I still think it's improper to comment on the facts to a jury.
>
> **The Court:** Well, it is. I didn't comment on them, and that's what I said. I can't answer that question for you. They asked me a question, "I read this date;" and I said, "I can't answer that question for you. The person who is here from the criminal lab is not here, and this DNA evidence belongs to the 2006 case." That's not commenting. I didn't say anything more than that.

Doc. 12, att. 6, pp. 68–69. After further discussion, Robideaux noted that he was preserving his objection for the record and the trial resumed. *Id.* at 69–70. Robideaux then presented the exhibit for the jury to review. *Id.* at 70.

As noted *supra*, the petitioner subsequently filed a motion for a new trial based on the trial court's comments. At the hearing on this matter, the judge offered the following comments:

> **The Court:** Yeah. I mean, to say I was a little put out would be an understatement of how this transpired. As Mr. Babin said, it certainly was not my desire to introduce this evidence. That was evidence [was] introduced by the defendant, and I assumed that the defendant knew all which was in the document that he sought to introduce, which included that evidence which was probably prejudicial; but certainly I didn't ask for it to be put in, nor did the State. And so it got in; and as Mr. Babin said, I was approached as I was walking to my office from the courtroom as the jury was breaking. And that was the question that was asked to me about the . . . '03 DNA. And I came immediately back in the courtroom, put the jury in the box, and had the dissertation which is in the record and attached to this motion. And I think, as Mr. Babin correctly noted, that is exactly what I would have done had I had an opportunity to do so in the courtroom in terms of that question asked. Certainly I think the defendant would have been prejudiced even more had an answer not been given to the jury in some form at some point, and they would have – in any event, I am confident that that is the right approach that I took. Whether the Third Circuit agrees with it or

> not, time will tell; but I certainly am not going to grant a new trial based on
> that motion. So I would deny your motion at this time.

*Id.* at 160–61.[3]

The Third Circuit made no determination as to whether the trial court's comments inappropriate, but instead determined that the claim had no merit because the petitioner could not prove that the remarks influenced the jury and contributed to the verdict. It noted:

> The jury already knew the lab report was related to the offense that occurred
> in 2006, as the victim's name and the date of the offense were included in
> the lab report, and when the report was introduced into evidence, defense
> counsel stated the lab report was being introduced "in regards to the victim,
> [J.H.]"

*Fruge*, 34 So.3d at 433. Accordingly, it ruled that the trial court had properly denied the motion for a new trial. *Id.*

Under federal standards, outlined *supra*, there is no requirement that the petitioner show prejudice flowing from the alleged judicial intervention. However, leaving aside the question of whether the comments were improper, the petitioner fails to show that they were qualitatively or quantitatively substantial. The comments around which he structures his claim did not relate any new information or opinions to the jury on the evidence. The fact that the DNA sample predated both counts of the indictment, and that the sample was used in investigation of the 2006 allegation, was apparent from the defense's own exhibit. The fact that this sample was apparently taken as part of a separate investigation in which the petitioner might have been a suspect was only noted outside of the jury's presence. Accordingly, the petitioner is not entitled to federal *habeas* relief under this claim.

### 2. *Sufficiency of Evidence – Forcible Rape of R.A.*

---

[3] We can locate no "dissertation" or other discussion between the judge and jury on this matter, nor is any noted in the Third Circuit's review of this claim. We assume instead that the trial judge is referring to his discussion with the attorneys.

The petitioner next claims that the evidence adduced at trial was insufficient to support his conviction of forcible rape for the 2004 incident involving R.A.

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense.[4] *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted). This court must also defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence. *Jackson*, 99 S.Ct. at 2789. Thus, under the standards of *Jackson* and § 2254(d), this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

Under Louisiana law, forcible rape is defined in relevant part as a rape

A. . . . committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

1. When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

LA. REV. STAT. § 14:42.1. The testimony of the victim alone is sufficient to establish the elements of a sexual offense, so long as that testimony is free of internal contradiction or irreconcilable conflict with physical evidence. *State v. Schexnaider*, 852 So.2d 450, 457 (La. Ct. App. 3d Cir. 2003); *State v. Rideaux*, 916 So.2d 488, 491 (La. Ct. App. 3d Cir. 2005) (quoting *State v. Roca*, 866 So.2d 867, 874 (La. Ct. App. 5th Cir. 2004)). Furthermore, "[t]he credibility of a witness,

---

[4] On federal habeas review, a court defers to the substantive elements of the offense as defined by state law. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).

including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." *Schexnaider*, 852 So.2d at 457 (quoting *State v. Williams*, 786 So.2d 805, 810 (La. Ct. App. 5th Cir. 2001)).

At trial both the petitioner and R.A. testified that they met for the first time on the November 5, 2004, at a local night club where R.A. was accompanied by her friend, Jeanne Istre. Doc. 12, att. 6, pp. 20–21 (testimony of R.A.); *id.* at 71–73 (petitioner). Both admitted that they drank at the night club, became inebriated, and danced with each other. *Id.* at 21, 30 (R.A.); *id.* at 73–74 (petitioner). The petitioner testified that he and R.A. had sexual intercourse in the parking lot of the night club but both R.A. and Istre testified that she and the petitioner never left the club. *Id.* at 22 (R.A.); *id.* at 6 (Istre); *id.* at 74–75 (petitioner).

R.A. left the club for the night with Istre. R.A. testified that she noticed someone was following them and that Istre crashed her vehicle in the process of trying to lose their pursuer. *Id.* at 22–23. The record does not establish whether the petitioner was their pursuer but he arrived at the scene of the crash a short time later and gave the women a ride back to the home of Istre's friend. *Id.* at 23 (R.A.);  *id.* at 77–78 (petitioner). The petitioner then offered R.A. a ride to her home, which she accepted. *Id.* at 24; *id.* 79–80 (petitioner).

R.A. testified that she blacked out or, more likely, fell asleep in the petitioner's car. *Id.* at 24, 40. When she awoke, the petitioner's vehicle was on a gravel road and the petitioner claimed he could not start it. *Id.* at 24–25. She stated that she could feel something was wrong and got out of the vehicle to run. *Id.* at 25. However, upon realizing there was nowhere to go, she returned to the vehicle, where the petitioner grabbed her. *Id.* R.A. told him, "Please, no, just don't kill me out here," and the petitioner began to have vaginal sexual intercourse with her. *Id.* at 25–27. During the encounter, R.A. continued to beg him not to kill her and to ask him to stop. *Id.* When he was

finished, R.A. promised that she would not call the police and the petitioner brought her to her home. *Id.* at 27. R.A. did not know whether the petitioner had worn a condom during the encounter. *Id.* at 43–44. The following morning, she went to the hospital and submitted to a sexual assault examination. *Id.* at 32–36. On the forms provided for this examination she indicated that no threats were used. *Id.*

The petitioner, meanwhile, testified that R.A. began rubbing his leg and fondling him in the vehicle, soon after they left the home of Istre's friend. *Id.* at 80. He then pulled onto a gravel road, where they had oral and vaginal sexual intercourse. *Id.* at 80–81. He claimed that R.A. began "freaking out" during the encounter, hollering, "Please don't kill me." *Id.* He testified that he stopped at this point and then brought R.A. home. *Id.* at 82. Finally, he testified that he did not wear a condom and could not recall if he had ejaculated. *Id.* at 82. A crime laboratory certificate relating to R.A.'s accusations apparently revealed that the petitioner's semen was found in the sexual assault examination of R.A.[5] *Id.* at 63.

As stated *supra*, determinations on the weight of evidence and credibility of witnesses are the province of the jury. On federal habeas review all credibility choices and conflicting inferences must be drawn in favor of the verdict. *Ramirez v. Dretke*,  398 F.3d 691, 695 (5th Cir. 2005). Here R.A. testified that she was vaginally raped by the petitioner and that she did not resist because she believed that doing so would have been futile. The fact that R.A. indicated that no threats were used during her sexual assault examination does not contradict her testimony that the petitioner grabbed her (indicating his use of force) or her belief at the time that resistance was futile, because

---

[5] We cannot locate a copy of that certificate in the record and have only the prosecutor's representations of its findings. However, defense counsel also referred to these results as showing a match to the petitioner in his opening statement. Doc. 12, att. 5, p. 74.

she stated that her belief was based on the fact that she had nowhere to run rather than on any direct threat.

The petitioner presents nothing beyond his own account to contradict her testimony. Accordingly, he has not shown any error to the state court's rejection of his claim under federal law and is not entitled to federal habeas relief.

### 3. Sufficiency of Evidence – Simple Rape of J.H.

The petitioner next alleges that the evidence presented at trial was insufficient to support his conviction of simple rape from the 2006 incident involving J.H. We review this claim under the same standards as the previous one.

Under Louisiana law, simple rape is defined in relevant part as a rape

A. . . . committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:

1. When the victim is incapable of resisting or understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

LA. REV. STAT. § 14:43. As the Third Circuit noted, "[a] defendant can be convicted of simple rape when the victim's capacity to resist was negated by an abnormal condition or state of mind caused by alcohol consumption." *Fruge*, 34 So.3d at 429 (quoting *State v. Starr*, 2 So.3d 451, 459 (La. Ct. App. 5th Cir. 2008) (internal citation omitted)). The testimony of the victim alone is sufficient to establish the elements of a sexual offense, so long as that testimony is free of internal contradiction or irreconcilable conflict with physical evidence. *State v. Schexnaider*, 852 So.2d 450, 457 (La. Ct. App. 3d Cir. 2003); *State v. Rideaux*, 916 So.2d 488, 491 (La. Ct. App. 3d Cir. 2005) (quoting *State v. Roca*, 866 So.2d 867, 874 (La. Ct. App. 5th Cir. 2004)). Furthermore, "[t]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may

accept or reject, in whole or in part, the testimony of any witness." *Schexnaider*, 852 So.2d at 457 (quoting *State v. Williams*, 786 So.2d 805, 810 (La. Ct. App. 5th Cir. 2001)).

At trial J.H. testified that, on the evening of the incident, she and the petitioner were both visiting the home of J.H.'s sister and her sister's fiancé. Doc. 12, att. 5, pp. 98–99. She had not met the petitioner before that night. *Id.* at 104, 109. During the visit J.H. drank "probably . . . a couple of beers" and then participated in a drinking game with the petitioner and her sister's fiancé, where she drank "a few shots, probably about two or three." *Id.* at 101. After the game, she said, she began to feel tired and went to sleep on the couch. *Id.*

J.H. testified that she woke up to the petitioner raping her but did not know whether he was wearing a condom or whether he had ejaculated. *Id.* at 102, 104. Her clothing, including blue jeans that zipped and buttoned, had been removed down to her knees. *Id.* at 103–04. J.H. screamed, pushed the petitioner off of her, then grabbed her clothing and ran to her sister's room. *Id.* at 102–03. The petitioner's sister and her fiancé took her to another house, then to the hospital, where a sexual assault examination was conducted. *Id.* at 104, 107–08.

John Paul Melancon, who was J.H.'s sister's fiancé, also testified that J.H. had a couple of beers and two to three shots over the course of the evening. *Id.* at 78–81. After J.H. went to lie down, Melancon advised the petitioner that he could not stay over. *Id.* at 81. Melancon and the petitioner continued to socialize for a time and then Melancon's son awoke. *Id.* at 82. Melancon left to help the boy go back to sleep and ended up falling asleep in his son's bed, leaving the petitioner in the living room. *Id.* He next awoke to J.H.'s sister screaming for him, saying that the petitioner had attacked her sister and was trying to leave. *Id.* Melancon pursued the petitioner until the latter drove away in his truck. *Id.* at 82–83. He then returned to the house and tried to talk to J.H., but said that she was "hysterical" and "crying and sobbing." *Id.* at 83–84.

Shaneen H., J.H.'s sister, testified that she went to bed around the time the drinking game began. *Id.* at 92. She was awakened in the middle of the night when J.H. ran into her room "hysterical, just screaming and crying" and told Shaneen that the petitioner had forced himself on her. *Id.* at 92–93. Shaneen then left her bedroom and saw the petitioner was about to leave the house, at which point she woke Melancon. *Id.* at 93. She then attempted to take J.H. to the local police station but found that it was closed. *Id.* at 94. She then brought J.H. to Melancon's sister's house and called the police. *Id.* at 94. Shaneen testified that J.H. remained very upset throughout this time. *Id.*

Meanwhile, the petitioner testified that he was also highly intoxicated at the drinking game's conclusion. Doc. 12, att. 6, pp. 89–90. He also alleged that J.H. drank more than she had admitted. *Id.* at 96. He stated that he had passed out on the floor of the living room. *Id.* at 98. When he awoke, he saw J.H. walking toward her sister's room. *Id.* He claimed that she was in no hurry and was not screaming. *Id.*

The petitioner denied that he had made any advances on J.H. and also alleged that, because of a finger amputation, he would have had difficulty unbuttoning her blue jeans. *Id.* at 90–91. He stated that he first became aware of the accusation when he was leaving that night and Melancon pursued him. *Id.* at 91. The petitioner did not get out of his truck to fight Melancon because he was intoxicated and suffering from a back injury, and thus believed himself "in no condition to fight anybody." *Id.*

J.H. also testified that, shortly before going to her sister's house, she had had sex with her boyfriend and had not changed clothes since then.[6] Doc. 12, att. 5, pp. 99–100. Carolyn Booker, an analyst at the Acadiana Crime Lab, was offered by the state and accepted as an expert in forensic

---

[6] Shaneen testified that J.H. and her boyfriend had broken up shortly before the incident, but J.H. denied this. Doc. 12, att. 5, p. 97; *id.* at 99–100.

DNA analysis. Doc. 12, att. 5, pp. 109–110. She performed forensic analysis of samples taken from J.H. during a sexual assault examination relating to this incident. *Id.* at 110–11. Booker identified semen and another bodily fluid[7] on J.H.'s clothing and vaginal swab. *Id.* at 110–11. However, the samples did not match a sample taken from the petitioner. *Id.* at 112. Booker also stated that there were circumstances in which a perpetrator could penetrate a victim yet not leave any DNA behind, such as if the perpetrator were wearing a condom or simply did not ejaculate. *Id.* at 113. Finally, she said that the semen could be the result of J.H.'s earlier encounter with her boyfriend if it happened within 24 hours, and possibly up to within three days, of the examination. *Id.* at 114.

Here the petitioner alleges that the absence of physical evidence of any assault contradicts all testimony offered by the state of that assault. However, testimony provided an explanation, which the jury evidently credited, for the fact that the sexual assault examination did not produce any DNA results matching the petitioner. As for other evidence, such as bruising or tearing, J.H. did not allege any use of force and so there is no contradiction with her testimony.[8] The petitioner's contention that his amputated finger rendered him unable to remove J.H.'s clothing without difficulty is not enough, when the evidence is viewed in a light most favorable to the prosecution,

---

[7] Booker testified that this fluid was presumptively blood, as indicated by a screening test, but no further testing was conducted to confirm this presumption. Doc. 12, att. 5, p. 111.

[8] In their response to this claim, the respondent construes J.H.'s testimony as: "She testified that she woke up with the defendant . . . forcibly penetrating her vagina [citation omitted]." Doc. 12, att. 1, p. 17. However, the relevant testimony on the cited page only reads:

> **Q.** Let me stop you for a second. So what's the first thing you felt?
> **A.** Him kissing my neck.
> **Q.** And then what after that?
> **A.** I felt his penetration.
> **Q.** Was he touching you anywhere other than the penetration?
> **A.** Can you repeat the question?
> **Q.** Was he touching you anywhere other than the penetration?
> **A.** With his hands? Yes. He was grabbing my breasts.
> **Q.** Okay. You are positive that you were penetrated?
> **A.** Very positive.

Doc. 12, att. 5, p. 102. Thus J.H. did not testify to any use of force.

to create an unresolvable conflict with J.H.'s testimony that her jeans had been unbuttoned and pulled down during the attack. Additionally, the petitioner asserted that he had seen J.H. consume even more alcohol than she admitted to in her own testimony. The evidence at trial was therefore sufficient to establish that the petitioner sexually penetrated J.H. while she was rendered incapable of consenting due to a stupor or abnormal condition of mind caused by her alcohol consumption, and that he knew of that condition due to the fact that he had observed her drinking heavily and initiated the assault while she was unconscious. Accordingly, the petitioner shows no error to the state court's ruling under federal law and is not entitled to federal habeas relief under this claim.

### 4. *The sentences imposed are constitutionally excessive*

A sentence for a term of years violates the Eighth Amendment if it is grossly disproportionate to the offense. *Lockyer v. Andrade*, 123 S.Ct. 1166, 1173 (2003). The Supreme Court has stated that this will only be found in "exceedingly rare" and "extreme" cases. *Id.* (citing *Harmelin v. Michigan*, 111 S.Ct. 2680, 2705 (1991) (Kennedy, J., concurring)). If "a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality," the federal habeas court will then consider other sentences imposed for the same offense in the same and other jurisdiction. *Smallwood v. Johnson*, 73 F.3d 1343, 1346–47 (5th Cir. 1996). Sentences within statutory limits are entitled to great deference and will only be overturned upon a showing that the sentencing decision was "wholly devoid of discretion or amounted to an arbitratry or capricious abuse of discretion . . . or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) (internal quotations and citations omitted).

The petitioner alleges that his sentences – concurrent terms of thirty years for the forcible rape and twenty-five years for the simple rape, with two years of the forcible rape term and the entirety of the simple rape term to be served without benefit of probation, parole, or suspension of sentence – were constitutionally excessive. The petitioner argues that the trial court's failure to articulate factors informing the sentences or to state affirmatively that it had reviewed the presentence investigation report.

As the respondent shows, the court did enumerate several factors relating to both convictions at the resentencing. Doc. 12, att. 7, p. 179.  Additionally, and as noted by the Supreme Court when it reversed the Third Circuit's finding that the sentence for the simple rape was excessive:

> The crime of simple rape presupposes that the defendant has taken advantage of the victim's abnormal state of mind . . . . That a defendant may have taken advantage of an unconscious or sleeping victim alone does not place him among the most blameworthy of offenders committing the crime of simple rape. Nevertheless, the evidence related to the similar sexual assaults in this case shows that this defendant had engaged in a pattern of preying on young, incapacitated women, a factor the district court was free to consider in rendering the sentences in this case. Considering the defendant's 2006 rape of J.H. in the context of his behavior over an extended period of time, rather than in isolation, we are unable to find that the district court manifestly abused its broad discretion by imposing the maximum term of imprisonment for the rape of J.H., particularly since the district court would have been justified in ordering consecutive sentences in this case, thus, extending the period of parole ineligibility. Under the facts of this particular case, the reduction in sentencing exposure that [the] defendant received by the district court's decision to order the sentences to run concurrently supports the constitutionality of [the] defendant's simple rape sentence.

*Fruge*, 179 So.3d at 585–86 (internal citations omitted). These factors support the sentences imposed. Additionally, the total term of imprisonment was considerably shortened by the trial court's determination that the sentences should run concurrently rather than consecutively.[9]

Petitioner makes no challenge to the factors enumerated by the trial court at resentencing and neither did he challenge their applicability. Accordingly, he shows no abuse or absence of discretion or error of law. Furthermore, he alleges nothing to create an inference of gross disproportionality on either sentence. He has not met his burden of showing that the sentences imposed were excessive and so shows no error to the state court's ruling under federal law. Therefore he is not entitled to federal habeas relief under this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

---

[9] Ordering that the sentences run consecutively would have been within the court's discretion and presumptively appropriate under Louisiana law, given that the crimes did not form part of the same transaction or series of transactions. *Fruge*, 179 So.3d at 584–84 (citing LA. C. CR. P. art. 883).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 1st day of December, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE